IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **MORGAN STANLEY,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-19-489 |
| | * | |
| **NIRAV BABU,** | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Morgan Stanley brought this action to compel Defendant Nirav Babu to arbitrate a third-party claim for contribution and indemnification related to an improper transfer of funds from Morgan Stanley accounts. ECF No. 1. Pending before the Court is Defendant's Motion to Dismiss, ECF No. 14, Plaintiff's Cross-Motion for Summary Judgment, ECF No. 20, and Defendant's Motion to Quash Service of Process, ECF No. 25. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss is denied, Plaintiff's Cross-Motion for Summary Judgment is granted, and Defendant's Motion to Quash Service of Process is denied as moot.

**I.   BACKGROUND**

   **A. Factual Background**

On May 2, 2018, under the rules of the Financial Industry Regulatory Authority ("FINRA"), Morgan Stanley customers Darrell S. Newcomb and Karen R. Newcomb filed an arbitration claim against Plaintiff alleging that a former employee of Plaintiff, Sumitro Pal,

1

improperly convinced the Newcombs to wire $4 million to a Wells Fargo account owned by an entity known as "DH Investments LLC" (the "FINRA Action"). ECF No. 4-1 at 5–19.[1]

On August 8, 2018, Plaintiff filed a third-party claim for contribution and indemnification against Defendant, alleging that he "is the beneficial owner of the Wells Fargo account for 'DH Investments LLC'" and that the Newcombs' funds were "misappropriated at the directions of [Defendant]" or the misappropriation "was enabled by [Defendant's] negligent or reckless conduct in managing the DH Investments LLC account." ECF No. 4-1 at 45. Plaintiff contended that Defendant, who was also a Morgan Stanley customer, was subject to arbitration in the FINRA Action by virtue of the Arbitration Clause in various Customer Agreements he had signed with Morgan Stanley:

> You agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between you and MSSB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by you with MSSB individually or jointly with others in any capacity; (ii) any transaction involving MSSB or any predecessor or successor firms by merger, acquisition or other business combination and you, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between you and us, any duty arising from the business of MSSB or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which MSSB is a member.

*Id.* at 55–56, 68–69, 80–81, 93–94, 105–6.

Defendant refused to submit to arbitration, and his counsel requested that FINRA dismiss the third-party complaint in four separate letters between October 22, 2018 and November 13, 2018. *Id.* at 109–24. On November 20, 2018, Plaintiff's counsel responded to Defendant's letters by referencing the Arbitration Clause in the Customer Agreements; Plaintiff's counsel argued

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

that the indemnification and contribution claims were claims between Plaintiff and Defendant arising from a transaction involving Plaintiff and Defendant, and therefore fell within Clause (ii) of the Arbitration Agreement, because they were based on the contention that the money transferred from the Newcomb's Morgan Stanley account was misappropriated by Plaintiff. *Id.* at 127–28. On January 24, 2019, the Director of FINRA's Office of Dispute Resolution determined that Defendant was "not compelled by the Code of Arbitration Procedure to arbitrate" Plaintiff's contribution and indemnification claims, but that he could voluntarily agree to FINRA's jurisdiction (the "FINRA Order"). *Id.* at 154. "In the absence of such a voluntary submission, or a court order compelling his submission to arbitration this dispute," FINRA ordered that the matter proceed without Defendant's participation. *Id.*

### B. Procedural Background and Service of Process

On February 19, 2019, Plaintiff filed a Complaint and Petition to Compel Arbitration in this Court requesting an order to compel in Count I and an award of attorney fees in Count II. ECF No. 1. On April 5, 2019, an Affidavit of Service was filed reflecting that Vincent Piazza, a private process server, had served Bhupesh Babu, Plaintiff's father, on March 13, 2019 at 2518 Moores Boulevard, Upper Marlboro, Maryland 20774 (the "Upper Marlboro" address). ECF No. 11. The Affidavit stated that Mr. Bupesh Babu was "a person of suitable age and discretion, who stated that he/she resides therein with Nirav Babu." *Id.*

On April 16, 2019, Plaintiff filed a Motion for Entry of Default and Default Judgment. ECF No. 12. On April 24, 2019, Defendant filed a Motion to Dismiss Complaint Pursuant to Rule 12(b)(1), 12(b)(5), and 12(b)(6), which included a response to Plaintiff's Motion for Entry of Default and Default Judgment. ECF No. 14. In that Motion, Defendant stated that his actual address is 801 Key Highway, Unit 335, Baltimore, Maryland 21230 (the "Baltimore address"),

3

not the Upper Marlboro address at which Mr. Piazza had allegedly effected service. ECF No. 14-17 at 2.

On May 8, 2019, Plaintiff filed a Cross-Motion for Summary Judgment, which included a response to Defendant's Motion to Dismiss and a reply in support of its Motion for Entry of Default and Default Judgment. ECF No. 20. On May 21, 2019, Defendant filed a reply in support of his Motion to Dismiss, which included a response to Plaintiff's Cross-Motion for Summary Judgment. ECF No. 21.

On May 31, 2019, a Second Affidavit of Service was filed acknowledging Defendant's assertion in his Motion to Dismiss that he did not live at the Upper Marlboro address, but rather at the Baltimore address. ECF No. 22. The Affidavit reflected the following attempts at service by Mr. Piazza:

- On May 8, 2019, Mr. Piazza was greeted by the concierge at the entrance to the secure building located at the Baltimore address. The concierge called Unit 335, but he received no answer.

- On May 9, 2019, Mr. Piazza once again had the concierge call Unit 335, but he received no answer. The concierge stated that Plaintiff had moved out of Unit 335 and the building a few months prior.

- On May 10, 2019, Mr. Piazza interacted with a concierge named Jhayson, who called Unit 335 and spoke to a woman through the front desk phone. The woman stated that Plaintiff had moved out of her apartment months ago and that she did not have a forwarding address for him.

- On May 14, 2019, Mr. Piazza returned to the Baltimore address, but Jhayson refused to call Unit 335 because he had already informed Mr. Piazza that Plaintiff was not a resident. At that time, Mr. Piazza served Jhayson with this action.
- On May 17, 2019, between 7:30 a.m. and 10:30 a.m. and between 12:30 pm and 2:00 p.m., Mr. Piazza returned to the Baltimore address, but he was unable to locate Plaintiff, or the vehicle registered to Plaintiff, entering or exiting the building.

*Id.*

On June 20, 2019, Defendant filed a Motion to Quash the Second Affidavit of Service. ECF No. 25. Plaintiff filed a response on July 5, 2019. ECF No. 26. That same day, a Supplemental Affidavit was filed reflecting that, in connection with the First Affidavit of Service, Mr. Piazza was no longer certain that Mr. Bhupesh Babu had stated to him that Plaintiff lived at the Upper Marlboro address. ECF No. 27. Defendant filed a reply in support of his Motion to Quash on July 18, 2019. ECF No. 28.

## II. STANDARD OF REVIEW

Defendant has moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of service of process pursuant to Federal Rule of Civil Procedure 12(b)(5), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court will present the relevant standards of review below.

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

"A district court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Upstate Forever v. Kinder Morgan Energy*

*Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018) (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). "The burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Constr.*, 776 F.3d 271, 272 (4th Cir. 2015). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Where jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 19 L.Ed. 264 (1868)).

### B. Motion to Dismiss Pursuant to Rule 12(b)(5)

Plaintiffs bear the burden of establishing the validity of service under Federal Rule of Civil Procedure 4. *O'Meara v. Waters,* 464 F. Supp. 2d 474, 476 (D. Md. 2006). The Fourth Circuit has provided that in cases where service of process has given a defendant actual notice of the claim against it, courts may adopt a liberal interpretation of Rule 4 and "uphold the jurisdiction of the court." *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963). While the "plain requirements for the means of effecting service of process may not be ignored," where the defendant has actual notice of the action, "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys. Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

### C. Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to

dismiss invoking 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### D. Summary Judgment

Plaintiff's Cross-Motion for Summary Judgment asks the Court to compel arbitration. A court may compel arbitration under the Federal Arbitration Act (the "FAA") if the parties agreed in writing to arbitrate the dispute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002); *see also* 9 U.S.C. § 2 ("[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). The FAA reflects the strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927 (1983). But "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501. "Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir.1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49, 106 S.Ct. 1415 (1986)).

Courts in this District have recognized that "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004); *see also PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). But where the parties dispute the validity of an arbitration agreement, "[m]otions to compel arbitration . . . are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011). Therefore, such motions "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "the judge's function is not . . . to weigh the evidence

and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986). Moreover, the Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks and citations omitted).

## III. DISCUSSION

The several motions that are pending present three main issues for this Court to resolve: (1) whether the Court has subject-matter jurisdiction over Plaintiff's claim; (2) whether Defendant has been properly served with this action; and (3) whether Defendant should be compelled to participate in arbitration. The Court will address each issue in turn.

### A. Subject-Matter Jurisdiction

Defendant contends that this Court lacks subject-matter jurisdiction over Plaintiff's claim because the determination by the Director of FINRA's Office of Dispute Resolution that Defendant was not required to participate in arbitration was non-appealable under FINRA Rule 12203(a) and Plaintiff failed to exhaust its administrative remedies by first appealing that decision to the Securities Exchange Commission ("SEC"). ECF No. 14 at 20–24. Both of these arguments lack merit.

First, even if the Court were to view Plaintiff's Complaint as an appeal, FINRA Rule 12203(a) would not, as Defendant contends, make the FINRA Order unreviewable. FINRA Rule 12203(a) provides that "[t]he Director may decline to permit the use of the FINRA arbitration

9

forum if the Director determines that ... the subject matter of the dispute is inappropriate, or that accepting the matter would pose a risk to the health or safety of arbitrators, staff, or parties or their representatives. Only the Director may exercise the authority under this Rule." This rule simply provides that the Director has sole authority within FINRA to determine FINRA's jurisdiction, and it "describes certain circumstances under which the FINRA Director may deny access to the FINRA arbitration forum." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 739 (9th Cir. 2014).

Moreover, an agency does not have the authority to preclude judicial review of its own decisions; rather, there is a presumption of judicial review "so long as no statute precludes review or the action is not one 'committed by law to agency discretion.'" *Garcia v. Neagle*, 660 F.2d 983, 987 (4th Cir. 1981) (quoting *Abbott Labs. v. Gardner*, 387 US 136, 140 (1967)). Defendant does not cite to, and the Court is unaware of, any statutory authority expressly precluding judicial review of a FINRA decision or committing determination of FINRA jurisdiction to FINRA's discretion. Thus, Defendant's argument that the FINRA Order is unappealable fails.

Defendant's second argument, that Plaintiff failed to exhaust administrative remedies, also fails. "[A]n appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993). Defendant does not cite to any agency rule that requires appeal of an action like the FINRA Order; instead, he contends that the Securities Exchange Act of 1934 (the "Exchange Act") required Defendant to appeal the FINRA Order to the Securities Exchange Commission ("SEC"). The Exchange Act provides for review by the SEC of an action of a self-regulatory

organization ("SRO"), including FINRA, if that action (1) imposes any final disciplinary sanction on any member of person associated with a member; (2) denied membership to any applicant; (3) prohibits or limits any person in respect to access to services offered by such organization or member thereof; or (4) bars any person from becoming associated with a member. 15 U.S.C. § 78s(d). Once the SEC reviews FINRA's action, a party can appeal that decision to the appropriate Court of Appeals. *Id.* § 78y(a)(1).

Defendant contends that the FINRA Order limited Plaintiff's access to a FINRA service—arbitration—and therefore it should have been appealed to the SEC. In support of that argument, he cites to *Charles Schwab & Co. v. Fin. Indus. Reg. Auth. Inc.*, 861 F. Supp. 2d 1063 (N.D. Cal. 2012) and *Morgan Stanley & Co*, Release No. 39459, 1997 WL 802072 (S.E.C. Dec. 17, 1997). *Charles Schwab & Co.* is of little benefit in this case because there the court reviewed the plaintiff's failure to exhaust administrative remedies with respect to a FINRA disciplinary action. 861 F. Supp. 2d at 1069. Defendant does not argue, nor could he do so credibly, that the FINRA Order constitutes a disciplinary action.

In *Morgan Stanley & Co.*, an SEC opinion, the SEC considered whether it had jurisdiction to review the actions of the National Association of Securities Dealers ("NASD")[2] involving the operation of Rule G-37 of the Municipal Securities Rulemaking Board, which provides, in relevant part, that "[n]o broker, dealer or municipal securities dealer shall engage in municipal securities business [as defined in the rule] with an issuer within two years after any contribution to an official of such issuer made by . . . any municipal finance professional associated with such broker, dealer or municipal securities dealer . . . ." 1997 WL 802072, at *2. In that case, the head of the Fixed Income Division of Morgan Stanley had contributed to a

---

[2] NASD is the predecessor to FINRA. *See Saad v. S.E.C.*, 718 F.3d 904, 906 (D.C. Cir. 2013).

United States Senate campaign and therefore became subject to Rule G-37's two-year prohibition. *Id.* at *1. Morgan Stanley's application for an exemption from the two-year prohibition was denied, and it eventually sought review by the SEC. *Id.* The SEC ultimately determined that it did not have jurisdiction to review NASD's denial of the request for an exemption from the operation of Rule G-37 under any of the four prongs of review under the Exchange Act.

In considering whether the denial of the exemption from Rule G-37 constituted "a denial of access to services offered by NASD," the SEC determined that the denial had "no impact on [Morgan Stanley's] access to any service offered by the NASD" because Morgan Stanley "did not seek access to any NASD service, but rather relief from the automatic operation of Rule G-37's prohibition, which its employee's actions triggered." *Id.* at *3. The SEC explained that "[i]n those cases in which we have found a denial of access, an SRO had denied or limited the applicant's ability to utilize one of the fundamentally important services offered by the SRO." *Id.* For example, the Chicago Stock Exchange's refusal to process a firm's request for registration as a market maker limited the firm's access to the Exchange's services, and the New York Stock Exchange's denial of a member's request to install telephone link-ups to permit direct communication between the Exchange's trading floor and non-members customers constituted a limit on access to services because the operation of the trading floor is the principal service offered by a national securities exchange. *See id.* There is little case law interpreting the meaning of "prohibits or limits any person in respect to access to services" under the Exchange Act, but at least one federal court has affirmed that revocation of New York Stock Exchange membership and cutting a member's access to phone lines on the Exchange floor constitute limits on access to

services. *See MFS Secs. Corp. v. New York Stock Exchange, Inc.*, 277 F.3d 613, 620 (2d Cir. 2002).

Whether the FINRA Order constitutes a limit on Plaintiff's access to FINRA services within the meaning of the Exchange Act is a difficult question that the parties largely gloss over. The Court concludes, however, that the FINRA Order was not a limit on Plaintiff's access to FINRA services such that Plaintiff was required to appeal the Order to the SEC instead of filing a Complaint and Petition to Compel Arbitration in this Court. Although arbitration is certainly a service offered by FINRA, the FINRA Order seems less like a prohibition or limitation on services and more akin to an "automatic" or mandated result of the FINRA Code of Arbitration Procedure or the Arbitration Clause in the Customer Agreements, similar to the operation of Rule G-37 in *Morgan Stanley & Co.*. *See* 1997 WL 802072, at *3.

This conclusion is bolstered by the FINRA Order's indication that Plaintiff could seek "a court order compelling [Defendant's] submission to arbitrate this dispute," suggesting that FINRA itself contemplated the possibility of a petition to compel filed in this Court as opposed to an appeal filed with the SEC. *See* ECF No. 4-1 at 154. This makes sense, given that the arbitrability of disputes is generally a "gateway question" that should be decided by a court. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Techs., Inc v. Commc'ns Workers*, 475 U.S. 643, 649 (1995)).

Here, there is no evidence in the Customer Agreements between the parties or elsewhere that the parties intended an arbitrator to determine the arbitrability of any disputes between them, so that is a question for this Court to decide in the first instance. *See Goldman, Sachs & Co.*, 747

13

F.3d at 739 (finding that FINRA Rule 12203(a) did not provide "clear and unmistakable evidence" that FINRA members consent to FINRA's determination of the issue of arbitrability and concluding that the court would determine whether the parties' disputes were arbitrable); *Morgan Stanley & Co. v. Couch*, 134 F. Supp. 3d 1215, 1226–27 (E.D. Cal. 2015) (finding that determination of arbitrability was within the purview of the court, not the FINRA arbitrator).

Moreover, interpreting the Exchange Act as suggested by Defendant would lead to absurd results. It would be illogical if a party were required to appeal to the SEC a determination by FINRA that a party was not compelled to arbitrate, but was permitted to come directly to a district court to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* in the absence of such a ruling. Such a reading would abrogate a statute that contains an absolute right for a party to seek an order compelling arbitration from a federal court where the parties have agreed to arbitration, *see* 9 U.S.C. § 4, and require parties to inconsistently detour through an agency to determine what typically amounts to a question of contract interpretation when that agency is no better equipped than a district court to answer that question, *see Cooper v. Lee*, 86 F. Supp. 3d 480, 485 (E.D. Va. 2015) (stating that one of the primary purposes of the administrative exhaustion doctrine is to permit agencies to apply their expertise (citing *McKart v. United States*, 395 U.S. 185, 193–94 (1969))).

Finally, at least one other federal court has considered a set of facts in which FINRA indicated that it would permit arbitration with a proposed defendant with a court granted a motion to compel, and that court gave no indication that the parties should have first appealed the FINRA decision to the SEC. *See Paquette v. McDermott Inv. Servs., LLC*, 2014 WL 5313945, at *2 (D. Mass. Oct. 17, 2014). Thus, the Court concludes that it does have subject

14

matter jurisdiction to determine whether Defendant should be compelled to arbitration, and therefore Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1) is denied.

### B. Service of Process

Defendant next contends that he has not been properly served in this case. He asserts that neither the First nor Second Affidavit of Service reflect proper service of process because the service package was never left with an individual capable of accepting service for Defendant. Under Federal Rule of Civil Procedure 4(e), an individual may be served in a judicial district of the United States (1) in accordance with the forum state's rules governing service of process, or (2) by delivering a copy of the summons and of the complaint to the individual personally, leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or delivering a copy of each to an agent authorized by appointment or by law to receive service of process. "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006) (citing *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963)). "Although courts may give Rule 4 liberal construction, the 'plain requirements for the means of effecting service of process may not be ignored.'" *Davis v. Baltimore City Cmty. Coll.*, 2019 WL 5636362, at *2 (D. Md. Oct. 31, 2019) (quoting *Armco, Inc. v. PenrodStauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1963)). Whether service of process has been effected must be determined under the circumstances of each case. *See Virginia Lime Co. v. Craigsville Distrib. Co.*, 670 F.2s 1366, 1368 (4th Cir. 1982); *Dodson v. Merson*, 2004 WL 1534209, at *2 (D. Md. July 8, 2004).

Under the particular circumstances of this case and applying the rule of liberal construction, the Court concludes that service of process on Defendant reflected in the First Affidavit of Service was sufficient. First, Defendant clearly has actual notice of this case, as he has actively litigated the case and filed a Motion to Dismiss. Second, the First Affidavit of Service reflects that that process was left at the Upper Marlboro Address with Mr. Bhupesh Babu, Defendant's father. ECF No. 11. Mr. Bhupesh Babu is someone of suitable age and discretion who resides at the Upper Marlboro address. ECF No. 14-16 ¶ 2. Although Defendant typically resides at the Baltimore address and had not resided there since 2005, ECF No. 14-17 ¶¶ 2, 3, he has asked Plaintiff to mail him official documents at the Upper Marlboro address, ECF No. 26-2 at 2, used the Upper Marlboro address as his official address with the Maryland and Florida bars, ECF Nos. 26-3, 26-4, and had his Morgan Stanley account statements mailed to the Upper Marlboro address, ECF Nos. 26-5, 26-6, 26-7, 26-8, 26-9. These facts certainly suggest that Defendant viewed the Upper Marlboro with some level of permanency and that he intended to return with some regularity, indicating to the Court that service at that address would fulfill "the real purpose of service of process [which is] to give notice to the defendant that he is answerable to the claim of the plaintiff." *Karlsson*, 318 F.3d at 669; *compare Lobato v. Herndon*, 2017 WL 1185202, at *4 (D. Md. Mar. 29, 2017) (finding proper service of process where service was effected on a college student at his parent's address, where he used the address to send and receive mailings and used the address on his college tuition statements), with *Tafler v. District of Columbia*, 2006 WL 3254491, at *4 (D.D.C. Nov. 8, 2006) (finding insufficient service where defendant's father was served in a different state where defendant did not reside and there was no evidence to suggest defendant's father could accept service of process). Next, Plaintiff has made no credible argument that maintenance of the suit would be prejudicial,

especially given he has been able to fully brief his arguments on the merits of Plaintiff's Complaint and Motion to Compel. *See Johnson v. Baltimore City Police Dep't*, 2013 WL 6048991 (D. Md. Jan. 29, 2013). Finally, and perhaps most importantly, quashing the First Affidavit of Service under these circumstances, especially where the relevant issues have already been fully briefed and Defendant has full notice of the claims against him, would cause unnecessary and undue delay and expense for the parties and the Court. *See Woodruff v. Thornsbury*, 2013 WL 6670259, at *3 (S.D.W.V. Dec. 18, 2013). Accordingly, Defendant's Motion to Dismiss Pursuant to Rule 12(b)(5) is denied.[3]

### C. Arbitration

Having determined that it has subject matter jurisdiction and Defendant was properly served, the Court is now in a position to address the merits of the Complaint and Petition to Compel. A party can compel arbitration pursuant to the FAA if it establishes (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidence by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Am. Gen. Life and Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–1 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Accordingly, we 'resolve any doubts concerning the scope of arbitrable issues ... in favor of arbitration.'" *Am.*

---

[3] In Defendant's Motion to Quash, Defendant also contends that the Second Affidavit of Service reflects improper service. Because the Court has already determined that service was proper with respect to the First Affidavit of Service, it need not address the Second Affidavit of Service. Accordingly, the Motion to Quash is denied as moot.

17

*Gen. Life and Acc. Ins. Co.*, 429 F.3d at 87 (quoting *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005)).

Here, it is undisputed that there is a dispute between the parties, there is a relationship of the transaction at issue to interstate commerce, and Defendant has refused to arbitrate; however, the parties disagree as to whether the Arbitration Clause in the Customer Agreements cover the dispute. "The issue whether a dispute is arbitrable presents primarily a question of contract interpretation, requiring that we give effect to the parties' intentions as expressed in their agreement." *Chorley Enters., Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (citation and internal quotation marks omitted). "In determining the parties' intent, we apply ordinary state law principles governing the formation of contracts." *Id.* The parties Customer Agreements are governed by substantive New York law. *See* ECF No. 4-1 at 48, 61, 73, 85, 97.

The relevant provision of the Arbitration Clause at issue in this case states:

> You agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between you and MSSB ... concerning or arising from ... any transaction involving MSSB ... and you, whether or not such transaction occurred in such account or accounts ... shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which MSSB is a member.

*Id.* at 55–56, 68–69, 80–81, 93–94, 105–6.[4] This contract language clearly covers the dispute between the parties because Plaintiff's third-party contribution and indemnification claims against Defendant "concern[] or aris[e] from" the "transaction" by which $4 million was misappropriated from the Newcombs' Morgan Stanley account to the DH Investments LLC account, allegedly at the direction of Defendant. *See id.* at 45. That the misappropriation did not

---

[4] Defendant had several agreements with Plaintiff, each of which contained an identical arbitration clause.

18

occur in the accounts that Defendant maintains with Plaintiff is irrelevant because any transaction involving the two parties is arbitrable "whether or not such transaction occurred in such account or accounts." *See id.* at 55–56, 68–69, 80–81, 93–94, 105–6.

Defendant contends that the third-party claim does not involve a transaction "between" Plaintiff and Defendant, and therefore it is not subject to arbitration. ECF No. 14 at 28. This is an incorrect interpretation of the Arbitration Clause because it does not require that the transaction be between Plaintiff and Defendant; rather, it only requires that the transaction involv[e] Plaintiff and Defendant. Any suggestion that the Court should interpret the Customer Agreement's use of the term "involving" to mean "between" is unpersuasive because the Customer Agreement uses the term "between" elsewhere in the Arbitration Clause and conflating the two words to have the same meaning would improperly render the different word choice "meaningless." *Givati v. Air Techniques, Inc.*, 960 N.Y.S.2d 196, 645 (N.Y. App. Div. 2013) (stating that "a court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous").

Defendant contends further that this interpretation of the Arbitration Clause is "truly extraordinary" because it would allow Plaintiff to compel Defendant to arbitrate in "any dispute" and "irrespective of the basis for that claim." ECF No. 14 at 27. This is not the case. As the Court has already explained, the Arbitration Clause is limited to transactions "involving" Plaintiff and Defendant; this would certainly not cover any dispute that could potentially arise between the parties.

Defendant also contends that he is not named in the Newcombs' arbitration claim against Plaintiff and that Plaintiff has not established why he should be held liable for any wrongdoing by DH Investments. These arguments are unpersuasive because it does not matter whether Defendant is mentioned in the Newcombs' claim; Plaintiff is attempting to compel Defendant to

arbitrate the third-party claim, in which he is certainly mentioned. Moreover, Plaintiffs do not appear to be suing Defendant in his official capacity at DH Investments; rather they are suing him for his own alleged conduct in directing the misappropriation of the Newcombs' funds. Any disputes as to the merits of that claim are to be resolved by the arbitrator and are irrelevant to whether the Arbitration Clause compels arbitration in this case.

The Arbitration Clause provides that the dispute at issue in this case requires arbitration. Accordingly, Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) is denied and Plaintiff's Cross-Motion for Summary Judgment is granted.[5] The parties shall participate in arbitration.[6]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied, Defendant's Motion to Quash Service of Process is denied as moot, Plaintiff's Cross-Motion for Summary Judgment is granted, and Plaintiff's Motion for Entry of Default and Default Judgment is denied as moot.[7] A separate Order shall issue.

Date: <u>March    23, 2020</u>                                            ___/s/_____
GEORGE J. HAZEL
United States District Judge

---

[5] In its Cross-Motion for Summary Judgment, Plaintiff stated that if the Court were to grant it summary judgment and issue an order to compel arbitration, it would voluntarily dismiss its claim for attorney fees in Count II without prejudice. ECF No. 20-1 at 17 n.6. Because the Court is issuing an order to compel arbitration, Count II is dismissed without prejudice.

[6] At the end of Defendant's Motion to Dismiss, Defendant states that should the Court "disagree with and deny [his] Motion to Dismiss," he "respectfully requests that this Court enter an order pursuant Fed. R. Civ. P 12(a)(4) requiring that [Defendant] filed his answer" to the Complaint. ECF No. 14 at 34. The parties' dispute in this case is whether they agreed to arbitrate Plaintiff's third-party contribution and indemnification claims; where the parties dispute the validity of an arbitration agreement, "[m]otions to compel arbitration . . . are treated as motions for summary judgment." *Rose*, 816 F. Supp. 2d at 251. The Court has determined that the parties did agree to arbitrate their dispute and therefore Plaintiff is entitled to summary judgment. There is no reason to order Defendant to file an answer.

[7] Plaintiff has also filed a Motion for Entry of Default and Default Judgment. ECF No. 12. Because the Court has ruled on the merits of this case and granted Plaintiff's Cross-Motion for Summary Judgment, it need not address Plaintiff's Motion for Entry of Default and Default Judgment. Accordingly, that Motion is denied as moot.