# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

MORGAN STANLEY,                    *

    **Plaintiff,**                     *

**v.**                                               **Case No.: GJH-19-489**

                                                     *

NIRAV BABU,                        *

    **Defendant.**                     *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Morgan Stanley brought this action to compel Defendant Nirav Babu to arbitrate a third-party claim for contribution and indemnification related to an improper transfer of funds from Morgan Stanley accounts. ECF No. 1. On March 23, 2020, the Court denied Defendant's Motion to Dismiss, granted summary judgment in Plaintiff's favor, and ordered the parties to arbitrate their dispute in front of the Financial Industry Regulatory Authority ("FINRA"). ECF No. 30. Defendant has appealed to the United States Court of Appeals for the Fourth Circuit. ECF No. 31. Pending before the Court is Defendant's Motion to Stay Order Pending Appeal, ECF No. 34, and Defendant's Motion to Expedite Court's Consideration of Defendant's Motion to Stay Order Pending Appeal, ECF No. 35. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's Motions are denied.

## I.    BACKGROUND

### A.    Factual Background

Morgan Stanley customers Darrell S. Newcomb and Karen R. Newcomb filed an arbitration claim against Plaintiff on May 2, 2018 pursuant to FINRA Rules 12300 and 12302

1

(the "FINRA Action"). ECF No. 4-1 at 5, 7, 19.[1] In their complaint, the Newcombs alleged that a former employee of Plaintiff, Sumitro Pal, improperly convinced the Newcombs to wire $4 million to a Wells Fargo account owned by DH Investments LLC. *Id.* at 7–8.

On August 8, 2018, alleging that Defendant "is the beneficial owner of the Wells Fargo account for 'DH Investments LLC'" and that the Newcombs' funds were "misappropriated at the direction of [Defendant]" or the misappropriation "was enabled by [Defendant's] negligent or reckless conduct in managing the DH Investments LLC account[,]" Plaintiff filed a third-party claim for contribution and indemnification against Defendant. ECF No. 4-1 at 45–46. In its third-party complaint, Plaintiff claimed Defendant, who was also a Morgan Stanley customer, is subject to arbitration in the FINRA Action by virtue of the Arbitration Clause in various Customer Agreements Defendant had signed with Morgan Stanley:

> You agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between you and MSSB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by you with MSSB individually or jointly with others in any capacity; (ii) any transaction involving MSSB or any predecessor or successor firms by merger, acquisition or other business combination and you, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between you and us, any duty arising from the business of MSSB or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which MSSB is a member.

*Id.* at 45–46, 55–56, 68–69, 80–81, 93–94, 105–06.

Defendant refused to submit to arbitration, and, in four letters sent between October 22, 2018 and November 12, 2018, Defendant's counsel requested that FINRA dismiss the third-party complaint. *Id.* at 109–24. Plaintiff's counsel responded to Defendant's letters on November 20, 2018. *Id.* at 127–28. In his response, Plaintiff's counsel argued that the indemnification and

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

contribution claims are claims between Plaintiff and Defendant arising from a transaction

involving Plaintiff and Defendant—reasoning that the claims are based on the allegation that

Plaintiff misappropriated the money transferred from the Newcombs' Morgan Stanley account—

and thus falls within Clause (ii) of the Arbitration Clause in the Customer Agreements. *Id.*

 On January 4, 2019, the Director of FINRA's Office of Dispute Resolution ("Director")

determined that the Defendant was "not compelled by the Code of Arbitration Procedure to

arbitrate" Plaintiff's contribution and indemnification claims, but noted that Defendant had the

option to voluntarily agree to FINRA's jurisdiction. *Id.* at 154. The Director, however, did not

discuss the Arbitration Clause at issue here or explain his reasoning. *Id.* Instead, the Director

suggested that, if Defendant did not voluntarily submit to FINRA's jurisdiction, a court could

compel his submission to arbitration in this dispute. *Id.* ("In the absence of such a voluntary

submission, or a court order compelling his submission to arbitrate this dispute, this matter will

proceed without the participation of [Defendant].").

### B. Procedural Background

 Plaintiff filed a Complaint and Petition to Compel Arbitration in this Court on February

19, 2019, requesting an order to compel in Count I and an award of attorney's fees in Count II.

ECF No. 1. After allegedly serving Defendant on March 13, 2019, ECF No. 11, and receiving no

response within the time allowed under Fed. R. Civ. P. 12(a)(1)(A)(i), Plaintiff filed a Motion for

Entry of Default and Default Judgment ("Motion for Default"), ECF No. 12, on April 16, 2019.

In opposition to Plaintiff's Motion for Default, Defendant filed a Motion to Dismiss Complaint

Pursuant to Rule 12(b)(1), 12(b)(5), and 12(b)(6) ("Motion to Dismiss") on April 24, 2019. ECF

No. 14.[2] On May 8, 2019, Plaintiff responded to Defendant's Motion to Dismiss with a Cross-

---

[2] Defendant's Motion to Dismiss also served as its opposition to Plaintiff's Motion for Default. ECF No. 14.

Motion for Summary Judgment. ECF No. 20.[3] Defendant responded in opposition on May 21,

2019, ECF No. 21,[4] and Plaintiff replied on June 3, 2019, ECF No. 23.

In a Memorandum Opinion and Order issued March 23, 2020, this Court denied

Plaintiff's Motion for Default and Defendant's Motion to Dismiss, granted Plaintiff's Cross-

Motion for Summary Judgment, and ordered the parties to arbitrate their dispute in front of

FINRA. ECF Nos. 29, 30. Defendant filed the instant Motion to Stay Order Pending Appeal

("Motion to Stay"), ECF No. 34, and Motion to Expedite Court's Consideration of Defendant's

Motion to Stay Order Pending Appeal ("Motion to Expedite"), ECF No. 35, on May 8, 2020.

After filing eight Consent Motions for Extension of Time to File an Opposition Brief, ECF Nos.

36, 37, 40, 42, 46, 48, 50, 52, which the Court granted, ECF Nos. 38, 39, 41, 43, 47, 49, 51, 53,

Plaintiff filed its Opposition to Defendant's Motion to Stay and Motion to Expedite on

September 16, 2020, ECF No. 54. On September 23, 2020, Defendant replied in support of its

Motion to Stay. ECF No. 55.

## II.     STANDARD OF REVIEW

"A stay is an exercise of judicial discretion and the propriety of its issue is dependent

upon the circumstances of a particular case." *Mayor & City Council of Baltimore v. BP P.L.C.*,

No. ELH-18-2357, 2019 WL 3464667, at *2 (D. Md. July 31, 2019) (internal quotation marks

omitted) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)). Defendant, as the party requesting

the stay, bears the burden of showing that a stay is warranted in the instant case. *See id.* (citing

*Nken*, 556 U.S. at 433–34). When analyzing whether a stay pending appeal is appropriate, courts

consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely

---

[3] Plaintiff's Cross-Motion for Summary Judgment served as its reply in support of its Motion for Default as well as its opposition to Defendant's Motion to Dismiss. ECF No. 20.
[4] Defendant's opposition to Plaintiff's Cross-Motion for Summary Judgment served as its reply in support of its Motion to Dismiss. ECF No. 21.

to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434; *see also Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970); *Nero v. Mosby*, No. MLG-16-1288, 2017 WL 1048259, at *1 (D. Md. Mar. 20, 2017). "Each factor . . . need not be given equal weight," *Par Pharm., Inc. v. TWI Pharm., Inc.*, No. CCB-11-2466, 2014 Wl 3956024, at *1 (D. Md. Aug. 12, 2014) (ellipsis in original) (quoting *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990)), and the first two factors of the stay standard "are the most critical." *Nken*, 556 U.S. at 434.

## III.   DISCUSSION

The Court analyzes each of the four factors identified above and, for the reasons that follow, concludes that Defendant has not shown that a stay pending appeal of this Court's order compelling arbitration is warranted.[5]

### A.   Likelihood of Succeeding on Appeal

"A party seeking a stay pending appeal must make a strong showing of likely success on the merits of the appeal. However, this standard does not require the trial court to change its mind or conclude that its determination on the merits was erroneous." *U.S. Home Corp. v. Settlers Crossing, LLC*, No. DKC 08-1863, 2015 WL 3973071, at *6 (D. Md. June 29, 2015) (internal quotation marks omitted) (quoting *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990)). Instead, the appeal "must raise [] serious and difficult questions of law[.]" *Id.* (brackets in original) (quoting *St. Agnes Hosp. of City of Baltimore, Inc.*,

---

[5] Also pending before the Court is Defendant's Motion to Expedite Court's Consideration of Defendant's Motion to Stay Order Pending Appeal. ECF No. 35. Because the Court has now—after eight consent motions extending the briefing schedule, ECF Nos. 36, 37, 40, 42, 46, 48, 50, 52—denied Defendant's Motion to Stay, ECF No. 34, the Court denies Defendant's Motion to Expedite as moot.

751 F. Supp. at 76). Moreover, if the other factors weigh in the moving party's favor, then a stay pending appeal may be appropriate even if the movant can only demonstrate a "substantial case on the merits[.]" *Par Pharm., Inc.*, 2014 WL 3956024, at *2; *see U.S. Home Corp.*, 2015 WL 3973071, at *6. Defendant has not met this standard.

Here, the Defendant makes two arguments as to why he is likely to succeed on the merits of his appeal. First, Defendant argues that "the Court erred when it decided that it possessed subject matter jurisdiction to rule" on Plaintiff's Petition to Compel Arbitration because the Director's determination that Defendant was not required to participate in the FINRA Arbitration was a final order and Plaintiff "did not exhaust its administrative remedies by appealing that order to the United States Securities and Exchange Commission ('SEC')." ECF No. 34-1 at 4. "Second, [Defendant argues that] the Court erred when it interpreted the language of the customer agreement(s) . . . at issue to mean that Morgan Stanley has the right to force Mr. Babu to participate in the FINRA Arbitration pursuant to the Federal Arbitration Act[.]" ECF No. 34-1 at 6. The Court addresses each of these arguments in turn.

### 1.   Defendant is Unlikely to Succeed on Appeal in Arguing that the Court Erred in Deciding it Possessed Subject Matter Jurisdiction Over Plaintiff's Petition to Compel Arbitration

In its March 23, 2020 Order, this Court concluded that "it does have subject matter jurisdiction to determine whether Defendant should be compelled to arbitration," and consequently denied Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1). ECF No. 29 at 14–15.  Defendant now argues that conclusion was erroneous that he is likely to succeed on appeal. ECF No. 34-1 at 4–6.

The heart of Defendant's argument is the contention that Plaintiff was required to exhaust its administrative remedies with the SEC before seeking judicial review of the Director's determination that it could not compel Defendant to arbitrate under the FINRA Code of

Arbitration Procedure ("FINRA Order"). ECF No. 34-1 at 4. In making this argument, Defendant relies heavily on 15 U.S.C. § 78s(d), which "provides for review by the SEC of an action of a self-regulatory organization, including FINRA, if that action . . . (3) prohibits or limits any person in respect to access to services offered by such organization or member thereof[.]" *Id.* at 4–5. Defendant argues that the FINRA Order was such an action because it "limited Morgan Stanley's access to FINRA's arbitration services," *id.*, and that the Court erred in holding the "FINRA Order was not a limit on Plaintiff's access to FINRA services such that Plaintiff was required to appeal the Order to the SEC instead of filing a Complaint and Petition to Compel Arbitration with this Court[,]" ECF No. 29 at 13.

While the Court did acknowledge in its Memorandum Opinion that "[w]hether the FINRA Order constitutes a limit on Plaintiff's access to FINRA services within the meaning of the Exchange Act is a difficult question" and that "[t]here is little case law interpreting the meaning of 'prohibits or limits any person in respect to access to services[,]'" ECF No. 29 at 12–13, that alone does not end the matter.[6] *St. Agnes Hosp. of City of Baltimore, Inc.*, 751 F. Supp. at 76 (D. Md. 1990). The Court also indicated that the difficult question of whether the FINRA Order falls within the language of 15 U.S.C. § 78s(d) is one "the parties largely gloss over[.]" ECF No. 29 at 13. That observation is still true. Defendant has not added any support to his previous arguments that the FINRA Order is covered by 15 U.S.C. § 78s(d). Rather Defendant

---

[6] A stay is sometimes appropriate when an appellant has only made a showing that an appeal raises serious and difficult questions of law rather than a "strong showing" of likely success on the merits of the appeal. *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990). "This is not to say, however, that every time a case presents difficult questions of law a stay should be entered." *Id.* (internal citation omitted). Rather, such a showing only satisfies the first factor of the stay standard when "the threat of irreparable injury to applicant is immediate and substantial" and "the interests of the other parties and the public are not harmed substantially." *Id.* (internal citation omitted). Thus, because the Court finds that there is not an immediate and substantial threat of irreparable harm to Defendant and the public interest weighs in favor of denying a motion to stay, a showing that there is a difficult question of law—whether the language of 15 U.S.C. § 78s(d) encompasses the FINRA—is not enough for Defendant to meet his burden on the first factor of the motion to stay standard.

asserts that the fact that the FINRA Order "limited Morgan Stanley's access to FINRA's arbitration services[,]" ECF No. 34-1 at 5, and "arbitration is a service offered by FINRA[,]" ECF No. 55 at 4, ends the matter. Defendant does not grapple with this Court's observation that the FINRA Order contemplated Plaintiff seeking a court order compelling Defendant's submission to arbitration rather than filing an appeal with the SEC, ECF No. 29 at 13, nor with the conclusion that Defendant's interpretation would lead to absurd results—"It would be illogical if a party were required to appeal to the SEC a determination by FINRA that a party was not compelled to arbitrate, but was permitted to come directly to a district court to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* in the absence of such a ruling[,]" *id.* at 14. Defendant also ignores the persuasive authority from the United States District Court for the District of Massachusetts where that court granted a motion to compel after considering a set of facts—similar to the facts of this case—in which FINRA indicated that it would permit arbitration with a proposed defendant only if the defendant voluntarily agreed or if a court granted a motion to compel. *Payette v. McDermott Inv. Servs., LLC*, No. 14-12377-FDS, 2014 WL 5313945, at *2 (D. Mass. Oct 17, 2014). The court in *Payette* gave no indication that the parties should have first appealed the FINRA decision to the SEC. *Id.*

Even if Defendant is correct that the FINRA Order is an agency action that limits access to services offered by FINRA, as contemplated by 15 U.S.C. § 78s(d), Defendant fails to engage with Plaintiff's argument that the Complaint and Petition to Compel Arbitration is not an appeal or a request for judicial review at all. ECF No. 20-1 at 10, ECF No. 23 at 3, ECF No. 54 at 6. The Court did not previously address this argument in its Memorandum Opinion and instead assumed for the sake of argument that Plaintiff's Complaint was an appeal. ECF No. 29 at 9. If the Complaint and Petition is not an appeal, however, the difficult question of whether 15 U.S.C.

§ 78s(d) applies, and consequently requires administrative exhaustion, is eliminated. Thus, the

Court addresses whether Plaintiff's Complaint and Petition constitute an appeal here and finds

that it does not.[7]

The FINRA Order that Defendant alleges Plaintiffs are appealing in their Complaint and

Petition to Compel states:

> The Director has determined that [Defendant] is *not compelled by the Code of Arbitration Procedure* to arbitrate the above referenced dispute with Respondent Morgan Stanley in this forum. [Defendant] has the option to voluntarily agree to FINRA's jurisdiction. In the absence of such a voluntary submission, or a *court order compelling his submission to arbitrate this dispute*, this matter will proceed without the participation of [Defendant].

ECF No. 4-1 at 154 (emphasis added). This language is fatal to Defendant's claim that the

Plaintiff's Complaint and Petition is an appeal. First, the Director's decision was limited to

holding that the Code of Arbitration Procedure does not compel Defendant to arbitrate. *Id.* The

standard for whether arbitration is required under FINRA's Code of Arbitration Procedure,

however, differs from the standard required for a party to compel arbitration under the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, the authority under which Plaintiff filed its

Complaint and Petition. *Compare Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87

(4th Cir. 2005) ("A party can compel arbitration if he establishes: (1) the existence of a dispute

between the parties, (2) a written agreement that includes an arbitration provision which purports

to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement,

to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to

arbitrate the dispute." (internal quotation marks omitted)) *with* 12000 Code of Arbitration

---

[7] Because the United States Court of Appeals for the Fourth Circuit will review this Court's determination that it possesses subject matter jurisdiction *de novo*, *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013), the Court may address previously unconsidered, but raised, arguments in its analysis of whether Defendant is likely to succeed on the merits of his appeal. Whether Plaintiff's Complaint and Petition are an appeal of the FINRA Order is such an argument. *See* ECF No. 20-1 at 10 ("Both of [Defendant's] theories rest on Defendant's patently false claim that Morgan Stanley is appealing the Director's decision embodied in the FINRA Order.")

Procedure for Customer Disputes, Rule 12200 (2008), https://www.finra.org/arbitration-mediation/printable-code-arbitration-procedure-12000#12101 ("Parties must arbitrate a dispute under the Code if: Arbitration *under the Code* is either: (1) Required by a written agreement, or (2) Requested by the customer; The dispute is between a customer and a member or associated person of a member; and The dispute arises in connection with the business activities of the member or the associated person" (emphasis added)). Plaintiff does not challenge whether FINRA's Code of Arbitration Procedure allows the Director to compel Defendant to arbitrate the dispute, but rather argues that the FAA, *see* 9 U.S.C. § 4, and the customer agreements between the parties require this Court to compel arbitration. Moreover, the FINRA Order clearly contemplates "a court order compelling [Defendant's] submission to arbitrate this dispute." ECF No. 4-1 at 154. Thus, as Plaintiffs have repeatedly argued, Morgan Stanley is not appealing the Director's determination, but rather is "following the FINRA Order to the letter[.]" ECF No. 20-1 at 10. Defendant has not met his burden of making "a strong showing that he is likely to succeed on the merits" on the issue of subject matter jurisdiction. *See U.S. Home Corp.*, 2015 WL 3973071, at *5.

> **2.    Defendant is Unlikely to Succeed on Appeal in Arguing that the Court Erred in Finding that the Arbitration Clause in the Customer Agreements Requires Arbitration of this Dispute**

The Court held in its Memorandum Opinion that the contract language contained in the various customer agreements between Plaintiff and Defendant, ECF No. 4-1 at 55–56, 68–69, 80–81, 93–94, 105–06, "clearly covers the dispute between the parties because Plaintiff's third-party contribution and indemnification claims against Defendant 'concern[] or aris[e] from' the 'transaction' by which $4 million was misappropriated from the Newcombs' Morgan Stanley account to the DH Investments LLC account, allegedly at the direction of Defendant." ECF No. 29 at 18 (alternations in original). Defendant argues that the Court interpreted the language in the

10

Arbitration Clause—"any transaction *involving* MSSB . . . and [Defendant,]" ECF No. 4-1 at 55–56, 68–69, 80–81, 93–94, 105–06 (emphasis added)—too broadly and that the language "limits the involvement to the transaction itself[,]" ECF No. 34-1 at 6—*i.e.*, to a transaction *between* the parties. Defendant has raised this same argument before, ECF No. 14 at 30 (paraphrasing the disputed language—involving MSSB and Defendant—as "a transaction between them"); ECF No. 21 at 14 (arguing that the language is limited to disputes that "have arisen from or concern, a transaction, an account, or a breach of an agreement as *between* Morgan Stanley and Mr. Babu" (emphasis added)), with no success, ECF No. 29 at 12 ("Defendant contends that the third-party claim does not involve a transaction 'between' Plaintiff and Defendant, and therefore it is not subject to arbitration. This is an incorrect interpretation of the Arbitration Clause because it does not require that the transaction be between Plaintiff and Defendant; rather, it only requires that the transaction involve Plaintiff and Defendant." (internal citation omitted)). Defendant is not likely to be any more successful on appeal.

"The FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Accordingly, we resolve any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 87 (internal quotation marks omitted and ellipses in original) (quoting *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005)). Moreover, the "Arbitration Act requires courts rigorously to enforce arbitration agreements according to their terms[.]" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal quotation marks omitted). As the Court has already discussed at length in its Memorandum Opinion, the term chosen in the arbitration clause at issue is "involving" not "between" and restricting the term "involving" to only mean "between" not

only conflicts with the FAA's general policy favoring arbitration, but also inappropriately

renders the drafters decision to use a different word—*i.e.*, "between"—elsewhere in the

Arbitration Clause meaningless. ECF No. 29 at 19 (citing *Givati v. Air Techniques, Inc.*, 104

A.D.3d 644, 645 (N.Y. App. Div. 2013) for the proposition that "a court should not read a

contract so as to render any term, phrase, or provision meaningless or superfluous"). Thus,

Defendant has not demonstrated a substantial likelihood of success on the merits of this issue, or

even that this issue raises a complex serious legal question. *See Mayor & City Council of*

*Baltimore*, 2019 WL 3464667, at *4 (holding that defendants have not met their burden on this

factor of the Motion to Stay standard where they "merely recite the same arguments outlined" in

their previous briefings).[8]

### B.        Irreparable Harm to the Moving Party

Defendant argues that, "if enforcement of the Court's Order is not stayed pending appeal,

then [Defendant] will be forced to participate in the FINRA Arbitration and the basis for

[Defendant's] appeal will become moot." ECF No. 34-1 at 8. This argument is unpersuasive.

Absent a stay, Defendant's appeal would only be rendered moot in the unlikely event that

FINRA renders its decision before resolution of Defendant's appeal. *See Morgan Stanley v.*

*Babu*, No. 20-1443 (4th Cir.) (scheduling oral argument for the week of March 8-12, 2021); ECF

No. 54 at 10 ("The hearing in the FINRA action is currently scheduled for June 2021").  This

speculative harm does not constitute irreparable injury. *Mayor & City Council of Baltimore*,

2019 WL 34646667, at *5 (finding defendants' argument that their appeal would be rendered

moot absent a stay unpersuasive); *Rose v. Logan*, No. RDB-13-3592, 2014 WL 3616380, at *3

---

[8] Defendant's argument regarding the corporate veil is also unpersuasive since, as this Court found, "[a]ny disputes as to the merits of [Plaintiff's] claim are to be resolved by the arbitrator and are irrelevant to whether the Arbitration Clause compels arbitration in this case." ECF No. 29 at 20.

(D. Md. July 21, 2014) ("An appeal being rendered moot does not itself constitute irreparable injury."); *see also Nken*, 556 U.S. at 434–35 ("simply showing some possibility of irreparable injury fails to satisfy the second factor" (internal quotation marks and citations omitted)).

Defendant's allegation that he is currently being "forced to defend claims against him in a forum with limited procedural protections[,]" ECF No. 55 at 6, does not change the Court's conclusion. In the event Defendant succeeds on appeal, Defendant will not have waived his right to object to FINRA's jurisdiction by participating in the arbitration proceedings. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). Thus, Defendant is not suffering irreparable harm beyond the monetary cost, time, and energy involved in arbitration. *Long*, 432 F.2d at 980 ("mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough to grant a stay").

### C.      **Substantial Injury to Morgan Stanley**

Unlike the first two factors, the third factor of the stay standard weighs in Defendant's favor. Plaintiff is unlikely to be substantially harmed should the Court grant Defendant's Motion to Stay. While Plaintiff argues that it is likely to be harmed by a stay because Defendant "will take the opportunity to find ways to disperse the funds that should be used to repay Morgan Stanley for [Defendant's] fraud[,]" ECF No. 54 at 10, that argument is considerably weakened by the fact it has been over two years since Morgan Stanly filed its third-party complaint against Defendant in FINRA, ECF No. ECF No. 4-1 at 45–46. Thus, the Court agrees with Defendant that "[a] mere delay for Morgan Stanley in pursuing its claims in its forum of choice is nothing more than an inconvenience" and Plaintiff will not be substantially harmed if the Court grants Defendant's Motion to Stay. ECF No. 34-1 at 8.

### D.      The Public Interest

Defendant's argument that the public interest will be served by granting the stay is wholly dependent on his assertion that the arbitration agreement does not cover the dispute in question and that he is likely to succeed on appeal on that issue. *See* ECF No. 34-1 at 8–9; ECF No. 55 at 8. The Court, however, has rejected Defendant's argument and concluded the language of the Arbitration Clause covers the dispute. Therefore, guided by the "federal policy favoring arbitration," the Court finds that the public interest weighs in favor of denying Defendant's Motion to Stay. *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24.

***

Finding that Defendant is unlikely to succeed on the merits of his appeal, there is not an immediate and substantial threat of irreparable harm to defendant, and the public interest weighs in favor of denying the stay, the Court denies Defendant's Motion to Stay.

## IV.      CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay Order Pending Appeal is denied and Defendant's Motion to Expedite Court's Consideration of Defendant's Motion to stay Order Pending Appeal is denied as moot. A separate Order shall issue.

Date: <u>March     8, 2021</u>                        <u>     /s/                              </u>
                                                                      GEORGE J. HAZEL
                                                                      United States District Judge

14